UNITED STATES of America, Plaintiff–Appellee,

v.

Juri RIPINSKY, Defendant–Appellant. (Two Cases)

Nos. 93–50369, 93–50654.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Submission Withdrawn Feb. 3, 1994.

Resubmitted March 24, 1994.

Decided March 30, 1994.

**360**

Ellen R. Meltzer, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Jed S. Rakoff, Fried, Frank, Harris, Shriver & Jacobson, Los Angeles, CA, for defendant-appellant.

Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Juri Ripinsky appeals two separate district court orders, the first issued May 21, 1993, converting an *ex parte* restraining order into a preliminary injunction, the second issued August 11, 1993, converting a second *ex parte* restraining order into a preliminary injunction. Each restraint is pursuant to 21 U.S.C. § 853 but involves assets different from the other. As to each, Ripinsky argues that the government may not subject substitute assets to pretrial restraint and that the district court improperly relied solely on the indictment and hearsay evidence at the post-restraint hearing in violation of the due process and the confrontation clauses of the Constitution. We reverse the district court's decisions and vacate the orders on the grounds that 21 U.S.C. § 853 does not permit the pretrial restraint of substitute assets.

## FACTS

On April 29, 1993, a federal grand jury returned an indictment charging Ripinsky and two other defendants with violations of conspiracy, bank fraud, wire fraud, money laundering, and forfeiture statutes involving sums of approximately $2.3 million. The indictment alleged that Ripinsky and his codefendants entered into joint venture agreements with several banks to purchase, develop, and sell commercial real estate projects. The defendants allegedly defrauded the banks by inducing the institutions to release funds based on false representations and diverting those funds for their own benefit.

On the same day that the indictment was returned, the government obtained an *ex parte* temporary restraining order freezing assets valued at $1,745,500 held by Ripinsky in England. These assets would be subject to criminal forfeiture if Ripinsky were convicted of the money laundering charges. Neither party contends that the restrained assets were involved in the alleged crimes or that they are traceable to property that was involved. Instead, all parties agree that the assets are unconnected to the money laundering charges.

On May 17, 1993, the government moved to convert the *ex parte* temporary restraining order into a preliminary injunction and on May 19, 1993, a hearing was held pursuant to this motion. In a motion opposing a preliminary injunction, Ripinsky objected to the pretrial restraint of substitute assets. On May 21, 1993, the district court issued the injunction on the same terms as the original temporary restraining order. Ripinsky timely filed a notice of appeal on May 21, 1993.

On May 27, 1993, the grand jury returned a superseding indictment virtually identical to the original indictment except that it replaced four of the money laundering charges (Counts 16–19) with one new money laundering charge (Count 21).

On May 29, 1993, the government filed a motion to modify the preliminary injunction in accordance with the superseding indictment. The government sought to release $1,473,000 of the $1,745,500 restrained under Counts 16–19 of the original indictment and the May 21 order, and to restrain an additional $745,000 under the new money laundering charge.

On June 3, 1993, the district judge ordered the $1,473,000 returned to Ripinsky, leaving $272,500 subject to restraint under the first injunction. The district judge also entered a temporary restraining order freezing $745,000 of substitute assets under the superseding indictment. Thus, the first preliminary injunction restrains $272,500.

The government subsequently moved to convert the second temporary restraining order into a preliminary injunction and on June 24, July 8, July 22, and August 11, 1993, the district court held post-restraint hearings pursuant to this motion. On August 11, 1993, the district court issued the injunction on the same terms as the restraining order. Thus, the second preliminary injunction restrains $745,000 in addition to the $272,500 restrained under the first preliminary injunction. Ripinsky timely filed a notice of appeal challenging this second preliminary injunction.

After Ripinsky appealed to this court challenging the second preliminary injunction, he filed a motion with this court to assign the second appeal to the same panel. Because both appeals raise an identical issue of statutory interpretation, we have accepted the assignment and consolidated the appeals. Thus, both the first injunction that restrains $272,500 and the second injunction that restrains $745,000 are before us.

## JURISDICTION AND STANDARD OF REVIEW

■ The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to § 1292(a)(1). A pretrial order restraining assets is a preliminary injunction for procedural purposes and is therefore appealable as such. *United States v. Roth*, 912 F.2d 1131, 1133 (9th Cir.1990).

■ The interpretation of a statute is a question of law reviewed de novo. *United States v. Chatman*, 869 F.2d 525, 527 (9th Cir.1989).

### I.

Ripinsky was indicted for money laundering in violation of 18 U.S.C. § 1957. Upon conviction, the government is authorized to seize Ripinsky's forfeitable assets pursuant to 18 U.S.C. § 982, which authorizes forfeitures for violations of § 1957. Section 982 incorporates the procedures for criminal forfeitures provided in 21 U.S.C. § 853.[1] This case therefore involves the interaction of various subsections of § 853.

The law is clear that upon conviction, the government may seize forfeitable assets of the defendant. 18 U.S.C. § 982 & 21 U.S.C. § 853. Forfeitable assets are defined in § 982(a) to include all real or personal property involved in the underlying offense and all property traceable to such property. 18 U.S.C. § 982(a)(1). The government may also restrain forfeitable assets prior to conviction if it appears that the defendant may otherwise transfer or conceal those assets by

---

1. Specifically, § 982(b)(1) establishes that criminal forfeitures pursuant to § 982(a)(1) are governed by 21 U.S.C. § 853(c) & (e)–(p).

the time of conviction. 21 U.S.C. § 853(e). Finally, the law provides that if, upon conviction, forfeitable assets are unreachable by the government, the court shall order the forfeiture of substitute assets: property of the defendant that is not connected to the underlying crime. 21 U.S.C. § 853(p).[2]

While it is clear that upon conviction the government may seize substitute assets if the forfeitable assets are unavailable, the question in this case is whether the government may restrain substitute assets *prior to* conviction. This is an issue of first impression in our circuit. Those circuit courts that have considered this issue have come to opposite conclusions. *Compare In re Assets of Martin,* 1 F.3d 1351 (3d Cir.1993) (substitute assets are not subject to pretrial restraint under 18 U.S.C. § 1963) *and United States v. Floyd,* 992 F.2d 498 (5th Cir.1993) (substitute assets are not subject to pretrial restraint under 21 U.S.C. § 853) *with In re Billman,* 915 F.2d 916 (4th Cir.1990), *cert. denied,* 500 U.S. 952, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991) (substitute assets are subject to pretrial restraint under 18 U.S.C. § 1963) *and United States v. Regan,* 858 F.2d 115 (2d Cir.1988) (suggesting similar result under 18 U.S.C. § 1963 and holding that assets related to underlying crime that were transferred to third party are subject to pretrial restraint).[3]

## II.

As a preliminary matter, we must determine if Ripinsky's appeals have been rendered moot by events that have occurred since he appealed. On February 4, 1994, a jury found Ripinsky guilty on all of the counts with which he was charged. The government argues that this jury verdict renders Ripinsky's appeal moot because, upon conviction, Ripinsky's assets will be forfeitable pursuant to 18 U.S.C. § 982(a)(1), which authorizes the seizure of property at the time of sentencing.

We conclude that this claim is not moot. A claim becomes moot only when "the issues are no longer live or the parties lack a legally cognizable interest in the outcome." *Sample v. Johnson,* 771 F.2d 1335, 1338 (9th Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986); *see also Reimers v. Oregon,* 863 F.2d 630, 632 (9th Cir.1988). In this case, the judgment of conviction has not yet been entered against Ripinsky and will be entered only after sentencing, which is currently scheduled for May 1994. Until the judgment of conviction is entered, the sole legal basis for continuing to restrain Ripinsky's assets are the two pretrial restraining orders that are the subject of this appeal. Therefore, until the judgment of conviction is actually entered, the question of whether § 853(e) authorizes the government to restrain substitute assets remains a live controversy.

## III.

The statute clearly states what assets are subject to pretrial restraint. Section 853(e) provides:

(e) Protective Orders

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any property described in paragraphs (1) through (5).

21 U.S.C. § 853(p).

---

**2.** Section 853(p) provides:

If any of the property described in subsection (a) as a result of any act or omission of the defendant—

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty; the court shall order the forfeiture of any other property of the defendant up to the value of

**3.** The provisions of § 853 are substantially identical to RICO's criminal forfeiture provisions found at 18 U.S.C. § 1963. The legislative history states that the provisions of § 853 "closely parallel" those of § 1963, and the section analysis of § 853(e) incorporates by reference the section analysis of § 1963(e). *See* S.Rep. No. 98–225, Pub.L. 98–473, 98th Cong., 2d Sess. 198, 213, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3381, 3396 ("1983 Senate Report"). We therefore refer to cases and legislative history discussing § 1963 and § 853 interchangeably.

any other action to preserve the availability of *property described in subsection (a)* of this section for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation ... for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.

21 U.S.C. § 853(e) (emphasis added). Subsection (e) thus authorizes an injunction only to preserve "property described in subsection (a)."

Subsection (a) clearly describes only forfeitable assets and not substitute assets:

The court, in imposing sentence on a person convicted of an offense in violation of section ... 1957 ... of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

18 U.S.C. § 982(a)(1).[4] Subsection (a) does not mention substitute assets, which are instead defined in § 853(p). Because subsection (e) authorizes pretrial injunctions only to preserve "property described in subsection (a)," and because subsection (a) describes only forfeitable assets and not substitute assets, we conclude that subsection (e) does not authorize the pretrial restraint of substitute assets.

Our analysis is precisely the same as that relied on by the Third Circuit and the Fifth Circuit to find that substitute assets are not subject to pretrial restraint. *See Martin,* 1 F.3d at 1359 (stating that "[w]e ... find the plain language of [§ 1963] so clearly dispositive that ordinarily we would not consider

legislative history"); *Floyd,* 992 F.2d at 502 (stating that "[w]e find that [§ 853] ... plainly states what property may be restrained before trial" and holding that substitute assets are not subject to pretrial restraint).

The government argues that, rather than focusing on the specific language of subsection (e), we should read the statute as a whole to permit pretrial restraint of substitute assets. They contend that because subsection (p) provides for the forfeiture of substitute assets when the "property described in subsection (a)" is unavailable, substitute assets should be subject to *pretrial* restraint when subsection (a) assets are unavailable. We find these arguments unavailing. In effect, the government asks us to interpret the phrase "property described in subsection (a)" to mean "property described in both subsections (a) and (p)." We decline to read the statute in a manner so clearly contradictory to the plain statutory language. *See Floyd,* 992 F.2d at 502.

The government also argues that § 853(*o*), which states that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes," supports a broad reading of the provision governing restraining orders. Again, we agree with the *Floyd* court, which noted that while § 853(*o*) does "command for a liberal construction," it does not "authorize us to amend by interpretation."[5] *Id.* at 502. If Congress deems it appropriate in the future to subject substitute assets to pretrial restraints, it can amend the statute.

## IV.

A brief examination of the legislative history reinforces our conclusion based on the statutory language that Congress did not

---

4. The references in § 853(e) to subsection (a) refer to § 853(a). However, § 982 did not incorporate § 853(a) but instead provides its own definition of forfeitable assets in § 982(a). For the purposes of this case, there is no significant difference between § 853(a) and § 982(a).

5. Recently, the Supreme Court recognized that these criminal forfeiture statutes are punitive as well as remedial. *See Alexander v. United States,* — U.S. —, — - —, 113 S.Ct. 2766, 2775–76, 125 L.Ed.2d 441 (1993) (noting that § 1963 is "clearly a form of monetary punishment"); *Austin v. United States,* — U.S. —, —, 113

S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993) (noting that § 853 may serve remedial purposes but that "it can only be explained as serving in part to punish"). The Supreme Court rejected the argument that these forfeiture provisions are purely remedial in compensating the government for the costs associated with prosecution because the size of the forfeiture is wholly unrelated to those costs. *Austin,* — U.S. at — - —, 113 S.Ct. at 2811–21. Given the partly punitive nature of § 853, we must be cautious about construing § 853 liberally.

intend substitute assets to be subject to pretrial restraint.[6] Specifically, a 1983 Senate Report discussing § 853(p), the substitute assets provision, states that it "provides that where property found to be subject to forfeiture is no longer available *at the time of conviction*, the court is authorized to order the defendant to forfeit substitute assets of equivalent value." 1983 Senate Report at 201, *reprinted in* 1984 U.S.C.C.A.N. at 3384 (emphasis added). Elsewhere, the 1983 Senate Report states that the Bill includes "a provision authorizing the court to order the defendant to forfeit substitute assets when his property originally subject to forfeiture has been made unavailable *at the time of conviction.*" *Id.* at 197–98, *reprinted in* 1984 U.S.C.C.A.N. at 3380–81 (emphasis added).[7]

The government contends that only the government's interpretation of the statute serves to effectuate the remedial purpose that Congress sought to serve in its forfeiture provisions. It argues that only by permitting courts to restrain substitute assets when forfeitable assets already are unavailable prior to trial will the government be able to preserve pending trial the availability of property that can be forfeited upon conviction. The Fourth Circuit relied on this rationale to hold that RICO's forfeiture provisions permit the pretrial restraint of substitute assets. *See In re Billman,* 915 F.2d at 921 (quoting *United States v. Monsanto,* 491 U.S. 600, 613, 109 S.Ct. 2657, 2665, 105 L.Ed.2d 512 (1989) (stating that " '[p]ermitting a defendant to use assets for private purposes

that ... will become the property of the United States if a conviction occurs cannot be sanctioned' ")). We disagree.

It is true that if substitute assets are not frozen prior to trial, they may be transferred or concealed by the time of conviction and thus be unreachable by the government. However, this does not mean that the congressional purpose of the forfeiture statutes necessarily will be frustrated if substitute assets cannot be frozen prior to trial.

Prior to 1984, the government was authorized to seize only assets associated with the criminal offense, and these assets were subject to seizure only after the indictment had been filed. Defendants sought to defeat attempted forfeitures by transferring or concealing their assets prior to conviction or even prior to the indictment. Individuals who were being investigated by the Department of Justice had the incentive and the opportunity to conceal forfeitable assets before they were formally charged. 1983 Senate Report at 202, *reprinted in* 1984 U.S.C.C.A.N. 3385.

In 1984 and 1986, Congress sought to address this problem in two ways: First, they amended § 853(e) to authorize the government to restrain forfeitable assets *prior* to the indictment, and second, they adopted the substitute asset provision of § 853(p). Thus, Congress took a significant step to reduce the possibility that assets might disappear by providing for pre-indictment restraining orders. Nothing Congress did, however, suggests that the substitute asset provision and

---

6. The provisions of § 853(e) providing for preliminary injunctions of forfeitable assets were adopted at the same time that § 1963(e) was amended. *See* 1983 Senate Report at 212, *reprinted in* 1984 U.S.C.C.A.N. at 3395. The legislative history discussing § 853(e) incorporates by reference the section analysis of § 1963. *See* 1983 Senate Report at 198, 213, *reprinted in* 1984 U.S.C.C.A.N. at 3381, 3396.

The substitute asset provisions were added to both § 1963 and § 853 as part of the Anti–Drug Abuse Act of 1986. Pub.L. No. 99–570, 100 Stat. 3207 (1986). No House or Senate Reports accompanied this legislation. However, earlier versions of these provisions were considered by Congress in 1982. One Senate Report discussed the provisions at that time. *See* S.Rep. 97–520, 97th Cong., 2d Sess. 10, 14, 17 (hereinafter "1982 Senate Report"). Substantially the same provisions were included in a 1984 Bill, which is discussed in the 1983 Senate Report.

7. A 1982 Senate Report also analyzes a provision substantially like subsection (e). The Report states that "the restraining order provision applies only to [subsection (a)] property. It may not be applied with respect to other assets that may ultimately be ordered forfeited under the substitute assets provision." 1982 Senate Report at 10 n. 18. This provision clearly indicates that as of 1982 Congress did not intend for substitute assets to be subject to pretrial restraint. While this statement was not included in the 1983 Senate Report discussing the same sections, the Third Circuit found it to be an unequivocal statement of congressional intent. *In re Martin,* 1 F.3d at 1360 (stating that "[t]his legislative history unequivocally establishes that Congress meant what it said in limiting pre-conviction and pre-indictment restraints to subsection (a) property").

the temporary restraining order provision should be read in conjunction to provide the government with an even greater governmental power: the pre-indictment restraint of substitute assets.[8]

In conclusion, we note that criminal forfeiture laws provide the government with extensive powers to seize the assets of criminals. In asking us to authorize the pretrial restraint of substitute assets, the government asks us to grant them an even more powerful weapon, a weapon available against the accused, indeed, the presumed innocent. The government argues that such restraints only maintain the status quo until the trial is over, but these restraints can have far-reaching effects. They allow the government to reach virtually all of an individual's or a business's assets. Such restraints can cripple a business and destroy an individual's livelihood. In the face of clear statutory language to the contrary, we refuse to extend this drastic remedy to the untainted assets of an individual who is merely accused of a crime, and thus is presumptively innocent.

## CONCLUSION

We hold that substitute assets, as defined by 21 U.S.C. § 853(p), cannot be restrained prior to conviction under 21 U.S.C. § 853(e). Because the orders dated May 21, June 3, and August 11, 1993 restrained substitute assets prior to trial, we direct the district court to vacate its orders. Because we conclude that 21 U.S.C. § 853 does not authorize the pretrial restraint of substitute assets, we do not reach Ripinsky's claim that the district court did not grant a proper evidentiary hearing prior to restraining the assets.

**REVERSED AND REMANDED.**

---

**8.** Finally, the government argues that its interpretation of the statutes is consistent with decisions of the courts of appeals prior to 1986 that the government is not required to trace the "tainted" assets of a forfeiture to specific property in order to execute a forfeiture judgment. *See United States v. Ginsburg,* 773 F.2d 798 (7th Cir.1985) (en banc), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986) (court may enter money judgment against defendant

where profits from racketeering cannot be traced to identifiable assets), and *United States v. Conner,* 752 F.2d 566 (11th Cir.), *cert. denied,* 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985) (same)). These opinions, however, were written prior to the enactment of § 982, which defines forfeitable assets to be only those associated with the underlying offense or traceable to the offense and distinguishes between "forfeitable" and "substitute" assets.