59 F.3d 176
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John DOE, a juvenile, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John DOE, a juvenile, Defendant-Appellant.
 Nos. 94-10405, 94-10406.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 12, 1995.*
Decided June 20, 1995.
 
 Before: GOODWIN, FARRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John Doe 1 (No. 94-10405) and John Doe 2 (No. 94-10406), Navajo Indians, were adjudged juvenile delinquents for the murder of a 19 year old Navajo boy. They appeal their convictions and sentences. Both contend that inculpatory statements they made to the FBI should have been suppressed. We have jurisdiction, 12 U.S.C. Sec. 1291, and affirm.
 
 I. BACKGROUND
 
 3
 Several days after the discovery of the victim's body, Doe 2, then 15 years old, was implicated in the murder by his girlfriend. Because Doe 2 had an outstanding tribal warrant, he was immediately arrested. On April 21, 1993, while in tribal custody, Doe 2 was interrogated by Navajo Investigator Franklin Tsosie. Doe 2 maintained that Doe 1 was responsible for the victim's death. The admissability of Doe 2's April 21 statement is not at issue.
 
 
 4
 Based on Doe 2's April 21 statement, Doe 1, also 15 years old at the time, was interviewed on April 22 by FBI Agent David Herring. Also present at the interview were Doe 1's mother, Investigator Tsosie and another Navajo police officer. Doe 1 and his mother were informed that the purpose of the interview was to "find out what happened to David Claw." (SER at 47.) They were given no further explanation of the nature of the crime being investigated.
 
 
 5
 Doe 1 and his mother had been asked to come to the Navajo Division of Public Safety. (Blue Brief at 3.) Doe 1 was not under arrest and the district judge found that the interview was noncustodial. (SER at 127-28.) Nonetheless, Herring read Doe 1 the standard Miranda warnings. (SER at 47-48.) Doe 1 then indicated that he understood his rights, was willing to talk, and signed a written waiver. (SER at 48-49.) During the course of the interview Doe 1 acknowledged that he hit the victim approximately three times in the head with a crowbar. At the conclusion of the interview, Doe 1 left the police station with his mother. (SER at 52.)
 
 
 6
 On May 26, Doe 2, who was still in custody on the unrelated tribal warrant, was questioned a second time. His mother, FBI Agent Herring and another Navajo police officer were present. Doe 2 requested that his rights be read to him in Navajo. (SER at 57.) Herring proceeded to read the rights in English and then had another officer read the rights in Navajo. (SER at 57-58.) Doe 2 and his mother then began speaking to each other in Navajo. (SER at 58-59.) Immediately following their conversation, Doe 2's mother asked Agent Herring "when her son would be appointed a lawyer." (SER at 59, 81.) Herring responded "that presently ... no federal charges were pending against [Doe 2.]" (SER at 59.) He further explained "that ... if federal charges [were] later brought against [Doe 2], he would be appointed a lawyer during the -- court procedures." (SER at 59.) Agent Herring then repeated the portion of the Miranda warnings that indicated he did not have to speak, and if he chose to speak he could stop at any time. (SER at 59.) Doe 2 stated that he understood his rights and was willing to talk. He also signed a written waiver which was witnessed by his mother. (SER at 60.) Doe 2 then acknowledged that he struck the victim approximately 15 times in the back with a crowbar. Doe 2 was not arrested on the federal charges at that time. (SER at 64.)
 
 II. DISCUSSION
 A. Doe 1
 
 7
 Doe 1 argues that his April 22 interview was conducted in violation of the parental notification requirements of 18 U.S.C. Sec. 5033 and In re Gault, 387 U.S. 1 (1967). The scope of Sec. 5033 and In re Gault are questions of law that we review de novo. See United States v. Ripinsky, 20 F.3d 359, 361 (9th Cir. 1994) (interpretation of statute). We review underlying facts found by the district court for clear error. Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir. 1991) (en banc), cert. denied 502 U.S. 1031 1992).
 
 
 8
 Section 5033 applies when "a juvenile is taken into custody for an alleged act of juvenile delinquency."[1] We need not decide whether Sec. 5033 applies to pre-arrest, custodial interrogations. The district court found that Doe 1 was not in custody during the April 22 interview. (SER at 127.) Whether a suspect is in "custody" is essentially a question of fact reviewed for clear error. Territory of Guam v. Palomo, 35 F.3d 368, 375 (9th Cir. 1994), cert. denied, 115 S. Ct. 750 (1995). The district court's finding is not clearly erroneous. See id.; see also Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (suspect who came voluntarily to police station for brief interview and departed at conclusion, not in custody); California v. Beheler, 463 U.S. 1121, 1122-23 (1983) (same).
 
 
 9
 Doe 1's reliance on In Re Gault is also misplaced. In In re Gault the Court held in part that Due Process requires a child and his parents "be notified, in writing, of the specific charge or factual allegations to be considered at [a] hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation." 387 U.S. at 33. The opinion did not consider "the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process." Id. at 13. The constitutionally mandated notice requirement of In re Gault does not apply to the noncustodial, pre-arrest interview of Doe 1. See Colorado v. Spring, 479 U.S. 564, 577 (1987) (failure to inform suspect of subject matter of interrogation not relevant to waiver of Fifth Amendment privilege).
 
 
 10
 Doe 1 also argues that he did not knowingly and intelligently waive his Miranda rights. Because we affirm the district court's finding that the April 22 interview was noncustodial, we need not decide whether his waiver was knowing and intelligent. See United States v. Calise, 996 F.2d 1019, 1022 (9th Cir. 1993) (Miranda does not apply to noncustodial questioning), cert. denied, 114 S. Ct. 895 (1994).
 
 B. Doe 2
 
 11
 Doe 2 contends that the May 26 custodial interrogation continued after he invoked his right to counsel. We review de novo whether a statement is sufficient to invoke the right to counsel. United States v. Ogbuehi, 18 F.3d 807, 813 (9th Cir. 1994).
 
 
 12
 To invoke the right to counsel, the suspect's request must be clear and unambiguous. Davis v. United States, 114 S. Ct. 2350, 2355-56 (1994). The question from Doe 2's mother, seeking to clarify "when her son would be appointed a lawyer," was not a clear and unambiguous request for her son to consult with counsel before answering questions. See id. ("maybe I should talk to a lawyer" insufficient). Agent Herring attempted to answer the question and reiterated that Doe 2 did not have to speak with him at that time. Doe 2 nonetheless indicated his willingness to speak with Agent Herring without counsel present and did so. He did not invoke his right to counsel.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 5033 provides in part:
 Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights, in language comprehensive to a juvenile .... The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.