**UNITED STATES of America**

v.

**William Michael STRUBE**

**No. 1:CR–97–0108–02.**

United States District Court,
M.D. Pennsylvania.

July 19, 1999.

Benjamin S. Waxman, William R. Tunkey, Robbins, Tunkey, Ross, Amsel, Raben & Waxman, P.A., Miami, FL, Mark D. Lancaster, Joan M. Tiberio, Karsh & Lancaster, Pittsburgh, PA, for Defendant.

Eric Pfisterer, U.S. Attorney's Office, Harrisburg, PA, for U.S.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court are the United States of America's motions to dismiss third-party claims of interest in: (1) certain real property forfeited pursuant to Defendant William Michael Strube's September 2, 1997 conviction; and (2) certain substitute assets forfeited pursuant to Defendant's conviction. The parties have briefed the issues, and the motions are ripe for disposition.[1]

1. Because the factual and legal and legal issues surrounding the two motions overlap, the court will address both motions in a single memorandum and order.

## I. *Background*

On April 29, 1997, The United States of America ("Government") filed a five-count indictment, charging Defendant and others with conspiracy to distribute cocaine, two counts of distribution of cocaine, conspiracy to launder proceeds of unlawful activities, and criminal forfeiture. Specifically, the criminal forfeiture count sought forfeiture of Defendant's interest, pursuant to 21 U.S.C. § 853(p), in the following: (1) real property located at 4578 Klinesville Road, West Hempfield Township, Lancaster County, Pennsylvania ("Klinesville Road Property");[2] (2) $1,081,400 in United States currency; and (3) substitute assets.

The case proceeded to trial, and on September 2, 1997, a jury found Defendant guilty on, *inter alia*, the criminal forfeiture count. On September 3, 1997, the court entered an order, molding the verdicts to reflect that Defendant and co-Defendant Richard Lyman Pitt were jointly and severally liable for the forfeited sum of $1,081,400 and that Defendant was subject to forfeiture of the Klinesville Road Property.

On September 22, 1997, the Government filed a motion for a preliminary order of forfeiture as to Defendant's interest in the Klinesville Road Property and the $1,081,400, pursuant to 21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1). On May 20, 1998, the Court granted the Government's motion. On July 9, 1998, the Government filed a motion to forfeit the following substitute assets, pursuant to 21 U.S.C. § 853(p): (1) real property located in West Hempfield Township, Lancaster County, Pennsylvania, consisting of 30,173 square feet ("Lot 1"); (2) real property located in West Hempfield Township, Lancaster County, Pennsylvania consisting of 39.504 acres

("Lot 2"); and (3) a boat named the "M/V Mistress" (hereinafter referred to collectively as the "Substitute Assets").[3]

On July 13, 1998, Defendant's wife, Star Nada Strube ("Star"), and his grandmother, Dorothy Strube ("Dorothy"), filed third-party claims of interest in the Klinesville Road Property. Defendant's mother, Irene Strube ("Irene"), filed a third-party claim of interest in the Klinesville Road Property on July 16, 1998. On July 30, 1998, the Government filed a motion to dismiss the third-party claims to the Klinesville Road Property filed by Irene and Dorothy.[4] By order dated July 31, 1998, the court deferred consideration of the third-party claims pending disposition of the Government's July 9, 1998 request for an order preliminarily forfeiting the Substitute Assets.

On August 27, 1998, the court granted the Government's July 9, 1998 motion and entered a preliminary order of forfeiture of the Substitute Assets and a final order as to Defendant's interest in the Substitute Assets. On September 29, 1998, Irene, Dorothy and Star (collectively "the Strubes") filed verified claims of interest in the Substitute Assets. The Government filed a motion to dismiss the Strubes' third-party claims to the Substitute Assets on November 4, 1998. On November 27, 1998, the Strubes responded to the Government's July 30, 1998 and November 4, 1998 motions to dismiss, and on December 28, 1998, the Strubes filed a supplement to their November 27, 1998 response.

On March 24, 1999, the court held a hearing on the Government's motions to dismiss the third-party claims. Following the hearing, the court ordered the Government and the Strubes to file additional briefs addressing certain issues raised dur-

---

**2.** The legal description of the Klinesville Road Property is included in the court's May 20, 1998 preliminary order of forfeiture. (Doc. 255.)

**3.** The legal description of each of the Substitute Assets is included the court's August 27, 1998 order, entitled "Preliminary Order of

Forfeiture of Substitute Assets and Final Order as to Defendant's Interest in Substitute Assets." (Doc. 312.)

**4.** The Government has not moved for dismissal of Star's claim to the Klinesville Road Property.

ing the hearing. The court also ordered the parties to notify the court in the event of a settlement as to any of the third-party claims. On April 15, 1999, the Government withdrew its motion to dismiss Dorothy's third-party claim of interest to Lot 1. The Government and the Strubes filed briefs on April 9 and April 26, 1999, respectively, in accordance with the court's March 24, 1999 order. On May 24, 1999, the court conducted a conference call with the Government and the Strubes to discuss certain issues which were addressed in their respective supplemental briefs to the Government's motion to dismiss.

## II. Legal Standard: Third–Party Claims to Forfeited Property

When property is ordered forfeited pursuant to the criminal forfeiture provisions of the United States Code, 21 U.S.C. § 853, third parties, i.e., persons other than the defendant, who claim to have legal interests in the forfeited property may petition the court for a hearing to adjudicate the validity of their claimed interests. 21 U.S.C. § 853(n)(2). Section 853(n)(6) provides two alternative methods by which third party claimants may prevail, i.e., successfully establish their rights, at a hearing. First, a third-party claimant may prevail by proving, by a preponderance of the evidence, that she:

[ (1) ] has legal right, title, or interest in the property ... [which] was vested in [her] rather than the defendant[;] or

[ (2) ] was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property.

*Id.*, § 853(n)(6)(A). Alternatively, a third-party claimant may prevail by proving, by a preponderance of the evidence, that she:

is a bona fide purchaser for value of the right, title or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.

*Id.*, § 853(n)(6)(B).

■ When it is clear from a third-party claimant's petition that she cannot, as a matter of law, prevail under Section 853(n)(6)(A) or (B), the court may dismiss the petition for lack of standing without conducting a hearing on that claim. *See United States v. Lavin*, 942 F.2d 177, 189 (3d Cir.1991) (affirming district court's dismissal of third-party petition challenging criminal forfeiture due to claimant's lack of standing under 21 U.S.C. § 853(n)(6)).

## III. Discussion

The Court will first summarize each of the third-party claims to the Klinesville Road Property and the Substitute Assets. The court will then address the Government's motions as they pertain to each claimant separately.

### A. Summary of the Third–Party Claims [5]

#### 1. Irene Strube

Irene asserts that she has an ownership interest and/or possessory interest in the Klinesville Road Property and the Substitute Assets pursuant to a judgment lien against Defendant in the amount of $141,-000 entered by the Court of Common Pleas for Lancaster County, Pennsylvania on October 14, 1997. According to Irene, the lien resulted from Defendant's failure to repay loans which Irene made to him. Irene further asserts that the loans were made for: (1) improvements and repairs to the Klinesville Road Property; (2) equip-

---

**5.** The court notes that in addition to the claims asserted by the Strubes in their respective verified claims of interest in the Klinesville Road Property and the Substitute Assets, the Strubes' brief in opposition to the Government's motions to dismiss contains two new arguments. One of these new arguments contains claims of interest in the Substitute As-

sets on grounds not raised in the Strubes' claim petitions; the other attempts to defeat the Government's motions, but does not specifically assert claims of interest in the forfeited property. The court will address each these arguments separately after consideration of the claims asserted in the Strubes' initial claim petitions.

ment used by Defendant in his excavating business; and (3) the purchase of the M/V Mistress.

### 2. *Dorothy Strube*

Dorothy asserts that she has an ownership and/or possessory interest in the Klinesville Road Property and the Substitute Assets [6] pursuant to a judgment lien against Defendant in the amount of $300,-000 entered by the Court of Common Pleas for Lancaster County, Pennsylvania on October 14, 1997. According to Dorothy, the lien resulted from Defendant's failure to repay several loans which she made to him. Dorothy further asserts that the loans were for improvements and repairs to the Klinesville Road Property and for equipment used by Defendant in his excavating business.

### 3. *Star Nada Strube* [7]

Star asserts that she has an ownership and/or possessory interest in Lots 1 and 2, which are adjacent to the Klinesville Road Property on which she resides, because she holds title to these properties together with Defendant, her husband, as tenants by the entireties. Star does not allege that the deed to Lots 1 and 2 reflect her interest as a tenant by the entireties; however, Star alleges that she and Defendant intended that the properties be held as such. According to Star, Defendant obtained Lots 1 and 2 from his father over a decade after he was married to Star, and in 1989 Defendant had his attorney prepare a deed conveying Lot 2 to Defendant and Star as tenants by the entireties.

Star further asserts, however, that "for reasons unknown to [her], the deed conveying Lot 2 to [her] and [Defendant] as tenants by the entireties was never executed." (Verified Claim of Interest in Substitute Assets by Star Nada Strube ¶ 11 (Doc. 333).)

Star also alleges an interest in Lots 1 and 2 on the basis that she ran a business, Lightning Ridge Stables, on those properties from 1987 through 1989 and that she has managed those properties, including payment of property taxes and maintenance costs, since 1989. To date, Star continues to board animals in a barn on Lot 2.

Star asserts that she has an ownership and/or possessory interest in the M/V Mistress because it was purchased by Defendant during his marriage with Star for use by each of them as a recreational vehicle. As such, Star claims that the M/V Mistress is marital property, and that it is titled in solely in Defendant's name merely because Defendant happened to be alone when the purchase of the boat was completed.

### B. *Motion to Dismiss Claims to Klinesville Road Property*

■ The Government contends that the third-party claims to the Klinesville Road Property filed by Irene and Dorothy should be dismissed because they lack standing to challenge the forfeiture under either 21 U.S.C. §§ 853(n)(6)(A) or (B). Irene and Dorothy do not dispute their lack of standing pursuant to § 853(n)(6)(A) [8] but rather, they contend

---

6. Dorothy asserts an additional, separate ownership claim to Lot 1, alleging that she has resided on this property since 1989 and that she purchased the property from Defendant in 1990. The court need not, however, address Dorothy's ownership claim to Lot No. 1 at this time because the Government has withdrawn its motion to dismiss this claim for lack of standing; thus, this claim will be addressed in an evidentiary hearing, held pursuant to § 853(n).

7. Because the Government has not moved to dismiss Star's claim to the Klinesville Road Property, her claim to that property need not

be addressed by the court in analyzing the instant motion.

8. Specifically, with respect to § 853(n)(6)(A), the Government argues that Irene has not demonstrated a legal right, title or interest in the Klinesville Road Property but rather, she merely holds the interest of a judgment lienholder. The Government further argues that the interest which is asserted by Irene was neither vested in Irene nor superior to Defendant's interest "at the time of the commission of the acts which gave rise to the forfeiture" of the Klinesville Road Property. 21 U.S.C. § 853(n)(6)(A).

that they have standing as bona fide purchasers pursuant to § 853(n)(6)(B). The Government argues that Irene and Dorothy lack standing under § 853(n)(6)(B) in that: (1) they are not bona fide purchasers of an interest in the Klinesville Road Property; and (2) even if they are deemed bone fide purchasers, they were not "reasonably without cause to believe that the [Klinesville Road Property] was subject to forfeiture" at the time they acquired bona fide purchaser status. *Id.* The court will address each of the Government's arguments in turn.

Irene and Dorothy contend that they are bona fide purchasers. They each assert that they made several loans to Defendant from 1990 through 1992[9] which were never repaid, and that they acquired liens against Defendant in October 1997, when the Defendant executed judgment notes in their favor. Although the judgment notes executed by Defendant ostensibly secured an interest in Defendant's estate for Irene and Dorothy, they did not perfect a lien or otherwise secure an interest in any specific property, much less the Klinesville Road Property. In other words, Irene and Dorothy are, at best, general creditors of Defendant's estate. As such, for the reasons set forth below, the court finds that Irene and Dorothy's claims of legal interest in

the Klinesville Road Property under § 853(n)(6)(B) must fail.

The Third Circuit has not directly addressed the issue of whether general, or unsecured, creditors may qualify as bona fide purchasers under § 853(n)(6)(B);[10] however, the Second, Sixth and D.C. Circuits have unambiguously held that they may not. *See United States v. Ribadeneira*, 105 F.3d 833 (2d Cir.1997); *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185 (D.C.Cir.1995); *United States v. Campos*, 859 F.2d 1233 (6th Cir. 1988). The rationale for such a holding was articulated by the *BCCI Holdings* court, which dismissed the third-party petitioners' claims to a defendant's forfeited assets:[11]

> [A] general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-a-vis the value of the defendant's post-forfeiture estate. Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant. That result appears patently at odds with the statutory scheme, which directs parties without

**9.** The court notes that in their brief, Irene and Dorothy assert that they made loans to Defendant between 1990 and 1996. (Strubes' November 27, 1998 Br. in Opp. to Govt.'s Mot. to Dism. (Doc. 295) at 6.) However, in her respective claims of interest in the Klinesville Road Property and the Substitute Assets, Dorothy alleges to have made loans to Defendant between 1990 and 1992, (Docs. 231, 279), and Irene does not specify the dates on which she claims to have loaned Defendant money. (Docs. 234, 278.) Nevertheless, the exact dates of the loans is not material to the instant motion.

**10.** The court notes that in *Lavin*, the Third Circuit suggested that a general creditor could not assert a claim under § 853(n)(6)(A). *Lavin*, 942 F.2d at 187 n. 12. However, although the *Lavin* court held that the claimant was not a bona fide purchaser, it did not reach the question of whether the general

creditor status precluded the claimant from asserting bona fide purchaser status. *Id.* at 188 (holding that claimant must establish that it intentionally transferred value to the forfeitor with an expectation of receiving value in return in order to be a bona fide purchaser).

**11.** The *BCCI Holdings* case involved forfeiture of assets under 18 U.S.C. § 1963(1), a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). However, the RICO forfeiture provisions and those involved in the instant matter "are so similar in legislative history and plain language as to warrant similar interpretation." *United States v. Ribadeneira*, 105 F.3d 833, 835 n. 2 (2d Cir.1997) (citing *United States v. Ripinsky*, 20 F.3d 359, 362 n. 3 (9th Cir.1994)); *see also Lavin*, at 185 n. 9 (noting that § 1963(1) and § 853(n) are identical and using § 1963(l)'s legislative history as a guide to interpreting § 853(n).)

an interest in specific property to seek relief from the Attorney General, not the court adjudging the forfeiture. The Attorney General has the authority to dispense confiscated funds "to protect the rights of innocent persons," 18 U.S.C. § 1963(g)(1),[12] and general creditors seem precisely the type of innocent persons Congress had in mind.

*BCCI Holdings,* 46 F.3d at 1191–92 (footnote added).

In reaching its holding, the *BCCI Holdings* court distinguished, and thus rejected, the Fourth Circuit's holding in *United States v. Reckmeyer,* 836 F.2d 200 (4th Cir.1987), a case upon which Irene and Dorothy rely. In *Reckmeyer,* the defendant/debtor's entire estate, as opposed to a mere portion of his estate, had been forfeited, and the court held that general creditors have an interest, as bona fide purchasers, in forfeited property if that property represents their only means of recovery. *See Reckmeyer,* 836 F.2d at 207–08. However, in the instant matter, as was the case in *BCCI Holdings,* there is nothing in the record indicating that the forfeited property represents the only means of recovery for Defendant's general creditors, such as Irene and Dorothy. As such, *Reckmeyer* is distinguishable from the instant case, and thus, the court finds the approach taken by the Second, Sixth and D.C. Circuits persuasive.

Because Irene and Dorothy do not assert interests in the Klinesville Road Property beyond those of general creditors, the court finds that they cannot qualify as bona fide purchasers of the property. Irene and Dorothy thus lack standing to challenge the forfeiture of the Klinesville Road Property and, accordingly, the court will grant the Government's motion to dismiss their claims to this property.[13]

## C. *Motion to Dismiss Claims to Substitute Assets*

### 1. *Irene and Dorothy Strube*

■ With the exception of Dorothy's ownership claim to Lot 1, which the Government does not challenge in the instant motions,[14] Irene and Dorothy's claims to the Substitute Assets are identical to their claims to the Klinesville Road Property. Likewise, the Government's arguments as to why Irene and Dorothy lack standing to challenge the forfeiture of the Substitute Assets under § 853(n)(6)(B) are identical to its arguments as to why they lack standing to challenge the forfeiture of the Klinesville Road Property.

However, Irene and Dorothy also challenge the Government's motion to dismiss their claims to the Substitute Assets by asserting that "the [G]overnment's forfeiture power against a third-party transferee does not extend to substitute property." (Strubes' Supp. Mem. at 2.) Specifically, Irene and Dorothy argue that there is a material distinction between "forfeitable property" and "substitute property" as defined in § 853; therefore, they argue, the provisions of § 853(n) do not address substitute property and thus forfeiture of third-party interests in substitute property is implicitly not contemplated under § 853. In support of their arguments, Irene and Dorothy cite *United States v. Bornfield,* 145 F.3d 1123 (10th Cir.1998), and *In re Moffitt, Zwerling & Kemler, P.C.,* 864 F.Supp. 527 (E.D.Va.1994), *aff'd in part, rev'd in part, sub, nom, United States v. Moffitt, Zwerling & Kemler, P.C.,* 83 F.3d 660 (4th Cir.1996), *cert. denied* 519 U.S. 1101, 117 S.Ct. 788, 136 L.Ed.2d 730 (1997).

---

**12.** The provisions of RICO relating to the power of the Attorney General with regard to property forfeitures, 18 U.S.C. § 1963(g)(1), are identical to the provisions of 21 U.S.C. § 853(i)(1), which govern the instant matter.

**13.** Because Irene and Dorothy were not bona fide purchasers of an interest in the Klines-

ville Road Property, the court need not address the second requirement for standing under 853(n)(6)(B), that the petitioners be "reasonably without cause to believe that the property was subject to forfeiture." *Id.*

**14.** *See* footnote 6, *supra.*

Indeed, the *Moffitt* court drew a distinction between the Government's § 853 forfeiture power against a defendant from that against a third-party transferee, stating that:

[t]he government's power against a defendant is extensive. It extends not just to proceeds of criminal activity, but to all property traceable to such proceeds. Beyond this, it extends even to substitute property, that is, to any of a defendant's property in the event that the actual criminal proceeds or other traceable property have been transferred, consumed, expended, or otherwise disposed of by defendant.... The government's power against a third party transferee is significantly less extensive. It extends only to the actual criminal proceeds or any property traceable to such proceeds.

*Id.*, 864 F.Supp. at 543. However, the *Moffitt* court neither cited authority for such an interpretation of § 853, nor explained the rationale for adopting such an interpretation; thus, the court finds no basis for such an interpretation of § 853. Section 853(p) addresses the forfeiture of substitute property as follows:

(p) Forfeiture of substitute property

If any of the property described in subsection (a) of this section,[15] as a result of any act or omission of the defendant—

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

21 U.S.C. § 853(p) (footnote added). A reading of the plain language of this sub-section gives no indication that substitute property is intended to be treated any differently, with respect to third-parties, than property which is forfeited pursuant to § 853(a). As such, the court finds the conclusory interpretation set forth in *Moffitt* unpersuasive. Moreover, the court finds *Bornfield*, the other case cited by Irene and Dorothy, equally unavailing. *See id.* 145 F.3d 1123. The *Bornfield* court drew a similar distinction, proclaiming that "[a]n asset cannot logically be both forfeitable and a substitute asset." *Id.* at 1139. However, this distinction was drawn merely to point out that the district court carelessly entered an order of forfeiture of a substitute asset which was also alleged to be a forfeitable asset. Thus, *Bornfield* is inapposite to the instant matter.

The court further notes that adoption of the interpretation of § 853 advocated by Irene and Dorothy is neither supported by a simple reading of the statute nor by logic. In fact, their reading of § 853 would lead to the absurd result of allowing a defendant to dish off potential substitute assets to third parties after being convicted on forfeiture charges without permitting the Government recourse against those third parties. Accordingly, the court finds that the Government's forfeiture powers against third parties extend to substitute assets.

Therefore, in accordance with the discussion in Section II(B), *supra*, the court concludes that as general creditors, Irene and Dorothy cannot qualify as bona fide purchasers. Thus, Irene and Dorothy lack standing to challenge the forfeiture of the Substitute Assets and, accordingly, the court will grant the Government's motion to dismiss their claims to the Substitute Assets.

### 2. *Star Nada Strube*

Because Star's claims to Lots 1 and 2 differ from her claim to the M/V Mistress,

---

**15.** Subsection (a) describes property used to facilitate the underlying criminal activity, any proceeds thereof and any property traceable to such proceeds. 21 U.S.C. § 853(a).

the court will address the Government's motion to dismiss her respective claims separately below.

### a. *Lots 1 and 2*

■ The Government contends that contrary to Star's assertions, Defendant and Star did not hold Lots 1 and 2 as tenants by the entireties and, therefore, Star's claim to Lots 1 and 2 should be dismissed. "The law in Pennsylvania is quite clear that for a tenancy by the entirety to arise, the 'four unities' of time, title, interest, possession and marriage must exist simultaneously." *U.S. v. Klimek*, 952 F.Supp. 1100, 1115 (E.D.Pa.1997) (citations omitted); *see Constitution Bank v. Olson*, 423 Pa.Super. 134, 620 A.2d 1146, 1151 (1993). Star does not allege that she obtained title to Lot 1 through a conveyance, much less a simultaneous conveyance to her and Defendant. Accordingly, she has failed allege facts which could support a finding that she holds an entireties interest in Lot 1.

With respect to Lot 2, Star argues that she acquired title by virtue of a deed prepared by Defendant's attorney in 1989, purportedly conveying Lot 2 from Defendant to Defendant and Star as tenants by the entireties. (Verified Claim of Interest in Substitute Assets by Star Nada Strube, (Doc. 333), Ex A.) However, it is undisputed that Defendant never executed the deed; as such, Lot 2 was never conveyed by Defendant. Thus, Star has failed to allege facts which, if true, demonstrate the existence of the unity of time or title with respect to Lot 2. Therefore Star cannot, as a matter of law, demonstrate that she holds an entireties interest in Lot 2.

### b. *M/V Mistress* [16]

■ The Government contends that Star's assertion of an interest in the M/V Mistress as marital property is incorrect as a matter of law. For the reasons set forth below, the court agrees.

It is undisputed that the M/V Mistress is titled solely in Defendant's name. However, Star asserts that because it was purchased by Defendant during the course their marriage, the M/V Mistress is marital property, thus entitling Star to one half of the proceeds realized from its sale. The Third Circuit addressed this issue in *United States v. Premises Known as 717 So. Woodward Street*, 2 F.3d 529 (3d Cir.1993) as follows:

> [a]lthough the Pennsylvania Supreme Court has not considered this issue, the Pennsylvania Superior Court has declined to read the marital property provision as conferring an ownership interest outside the context of equitable distribution.

*Id.* at 535 (listing cases). Moreover, the *Woodward Street* court noted that "[i]n forfeiture actions, federal courts applying the laws of other states have refused to find that a right to equitable distribution of marital property confers ownership independent of a divorce proceeding." *Id.*, 2 F.3d at 536 (citing *United States v. 116 Emerson St.*, 942 F.2d 74, 79 n. 3 (1st Cir.1991); *United States v. Schifferli*, 895 F.2d 987, 989 n. * (4th Cir.1990)). Accordingly, the court finds that Star's marital property claim to the M/V Mistress fails, and she cannot avoid dismissal of her claim on this basis.

### D. *Constructive Trust*

■ In their brief in opposition to the Government's motion to dismiss, the Strubes argue that the Government's motion should be denied as to certain of the substitute assets on the basis that Defendant holds these assets in constructive trusts for their respective benefit. Specifically, Irene and Dorothy claim that Lot 2 and the M/V Mistress are held in constructive trust for them on the basis that their loans to Defendant were used, in part, for improvements to Lot 2 and for the purchase of the M/V Mistress. Star claims

---

16. The court notes that Star does not respond to the Government's motion to dismiss her third-party claim to the M/V Mistress. Nevertheless, the court will address the Government's arguments as to why Star's claim to the M/V Mistress should be dismissed.

that Lots 1 and 2 are held for her in constructive trust on the basis that she "has been solely responsible for the maintenance of Lot 2 and has contributed to the payment of all property taxes." (Strubes' Br. at 13.)

Under § 853(n), the Strubes were obligated to file claims within thirty days after receiving notice of the Government's intention to forfeit the Substitute Assets,

> set[ting] forth the nature and extent of [their] right title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting [their] claim[s] and the relief sought.

21 U.S.C. § 853(n)(3); *see id.* § 853(n)(2). Significantly, the Strubes' respective claims of interest in the Substitute Assets did not include claims based upon the existence of constructive trusts. (Verified Claim of Interest in Subs. Assets by Irene, Dorothy, and Star, (Docs. 278, 279 and 280).)[17] As such, to the extent that the Strubes assert interests in the Substitute Assets based on the alleged existence of constructive trusts, these claims are untimely.

██ Moreover, even if the court accepted the Strubes' constructive trust claims as properly asserted under § 853, for the reasons set forth below, the court finds that their claims fail because third parties may not use claims of constructive trust under § 853(n)(6) to defeat the Government's forfeiture of property. The court is mindful that the Sixth and Seventh Circuits have explicitly held that a constructive trust may give rise to a third-party claim under § 853(n)(6).[18] *See Campos,* 859 F.2d at

1238–39; *Marx,* 844 F.2d at 1307–08. These holdings are, in large part, derived from thorough consideration of the language contained in § 853(n)(6) and its legislative history. Such consideration was undertaken by the respective courts in an attempt to determine whether Congress intended § 853(n)(6) to permit third-party claimants to prevent forfeiture of property in which the claimants hold technically equitable interests, as opposed to technically legal interests.[19] *See* 21 U.S.C. § 853(n)(6)(A) (requiring third-party petitioner to demonstrate "a *legal* right, title or interest in the property") (emphasis added).

While the majority of Circuits have concluded that Congress did not intend such a formalistic distinction and that claims which are equitable in nature may be asserted under § 853(n)(6) to the extent that they are enforceable under the law, *see BCCI Holdings,* 46 F.3d at 1189–91; *Schwimmer,* 968 F.2d at 1581–83; *Lavin,* 942 F.2d at 185 n. 10; *United States v. Marx,* 844 F.2d 1303, 1307–08 (7th Cir. 1988); *Reckmeyer,* 836 F.2d at 205; *Campos,* 859 F.2d at 1238–39, not every court so holding has explicitly held that a constructive trust may be raised under § 853(n)(6) to defeat the Government's forfeiture claim. *See BCCI Holdings,* 46 F.3d at 1190–91 (agreeing with courts which reject legal/equitable distinction, but disagreeing with determination that a constructive trust "can be interposed as superior to the government's forfeiture claim"); *Lavin,* 942 F.2d at 185 n. 10 (rejecting legal/equitable distinction, but not addressing issue of constructive trust).

---

**17.** The court further notes that the Strubes did not raise this issue in the March 24, 1999 hearing, their April 26, 1999 supplemental brief, or at the May 24, 1999 telephone conference.

**18.** The court notes that in *United States v. Schwimmer,* 968 F.2d 1570, 1581–83 (2d Cir. 1992), the Second Circuit explicitly held that a constructive trust could defeat the Government's forfeiture claim. However, the Sec-

ond Circuit apparently retreated from this position in *United States v. Ribadeneira,* 105 F.3d 833, 837 n. 10 (2d Cir.1997).

**19.** A constructive trust is an equitable interest, rather than a legal interest. *See Healy v. Commissioner,* 345 U.S. 278, 282, 73 S.Ct. 671, 97 L.Ed. 1007 (1953) ("[a] constructive trust is a fiction imposed as an equitable device for achieving justice").

In the absence of Third Circuit precedent on this issue, for the following reasons, the court will follow the approach taken by the D.C. Circuit in *BCCI Holdings*. In considering whether a claim of constructive trust is appropriate under § 853(n)(6), the *BCCI Holdings* court's inquiry went beyond whether claims arising in equity can be asserted under § 853(n)(6):

> Indeed, it seems to us that focusing on the distinction between equitable and legal interests obscures Congress' real intent. The key words in section [853(n) ](6)(A) to identify statutorily cognizable third party interests are "vested," "superior," and "at the time." To prevail under that provision, a third party must establish that [her] interest had vested or was superior to the defendant's interest "at the time of the commission of the acts which gave rise to the forfeiture."

*BCCI Holdings*, 46 F.3d at 1190. Thus, the *BCCI Holdings* court went on to hold that:

> Congress intended that as far as § [853(n) ](6)(A) is concerned, a third party's claim is to be measured not as it might appear at the time of litigation, but rather as it existed at the time the illegal acts were committed. A constructive trust is a remedy that a court devises after litigation. It is ... a fictional trust—not a real one. It could not have been shown to exist at the time the acts were committed. Moreover, Congress provided under § [853](c) that title in all criminally acquired property of the defendant is deemed to "vest[ ] in the United States upon the commission of the act giving rise to forfeiture." Congress, in other words, devised a statutory remedial scheme that reaches back to the time of the criminal acts to forfeit that property to the United States. The statute thus creates a retroactive legal fiction similar to a con-structive trust for the benefit of the United States. It is not open to a court to fashion another remedy (a competing fiction) that also reaches back to snatch the property away from the United States—which is exactly what a constructive trust would do.

*Id.* at 1190–91. Accordingly, the court concludes that even if the Strubes' constructive trust claims were properly asserted under § 853(n), they would nonetheless fail. Therefore, the Strubes cannot avoid the dismissal of their claims to the Substitute Assets on this basis.

### E. *Propriety of the Molded Verdict*

■ In their brief in opposition to the Government's motion to dismiss their third-party claims, the Strubes argue that the forfeiture of Defendant's properties is contrary to the verdict returned by the jury in his criminal proceeding. Specifically, the Strubes argue that the court's September 3, 1997 order, molding the verdict on Count V of the indictment (the forfeiture count) against Defendant and co-Defendant Richard Lyman Pitt "nullifies and stands in opposition to the verdict of the jury."[20] (Strubes' Br. at 13.) However, this argument fails for two fundamental reasons. First, as with their constructive trust claims, the Strubes failed to raise this issue in their claims of interest to either the Klinesville Road Property of the Substitute Assets. Thus, for the reasons discussed more fully in Section III(D), *supra*, this argument is not properly before the court.

Secondly, the court notes that to the extent that the Strubes even have standing to challenge Defendant's verdict, the instant argument, even if meritorious, does not place the Strubes within the narrow classes of third parties upon whom Congress intended confer standing under § 853(n)(6). As the Third Circuit stated in *Lavin:*

---

20. The jury found both Pitt and Defendant guilty on Count V, and found that they forfeited $826,400 and $255,000 in cash, respectively. (Docs. 198, 199.) The court's September 3, 1997 order molded the jury's verdict, making Defendant and his co-defendant Richard Lyman Pitt jointly and severally subject to forfeiture of $ 1,081,400 in cash. (Doc. 208.)

Congress did not intend section 853(n) to serve as a vehicle by which all innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief. Rather, it seems to us that Congress, in enacting section 853(n)(6)(A) and (B), intended to accord standing to only two narrow classes of third parties, and intended to require all other third parties to petition the Attorney General for relief, *see* 21 U.S.C. § 853(i).

*Id.*, 942 F.2d at 185. Thus, because the Strubes' contentions regarding the propriety of the court's order molding the verdict in the criminal proceeding do not assert claims pursuant to either § 853(n)(6)(A) or (B), such contentions cannot shelter the Strubes from the Government's motion to dismiss their claims the Klinesville Road Property or the Substitute Assets.

## IV. *Conclusion*

In accordance with the foregoing discussion, the court will grant the Government's motion to dismiss the third-party claims to the Klinesville Road Property filed by Irene Strube and Dorothy Strube. The court will also grant the Government's motion to dismiss the third-party claims to the Substitute Assets filed by Irene Strube and Star Nada Strube. Finally, the court will grant the Government's motion to dismiss Dorothy Strube's claim to Lot 2 and the M/V Mistress. An appropriate order will issue.