# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3486

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| Ronald N. Totaro, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: June 11, 2002

Filed: July 8, 2002

_____

Before BOWMAN, FAGG, and BYE, Circuit Judges.

_____

PER CURIAM.

Ronald Totaro was sentenced to thirty years in prison and fined $2.3 million after a jury convicted him of sixty-one counts of mail fraud, wire fraud, money laundering, engaging in unlawful money transactions and racketeering. Totaro now appeals a raft of issues involving his trial and sentence. We affirm.

Totaro operated an "advance fee" scheme in which he bilked investors out of millions of dollars. He controlled a web of corporations and associates who obtained advance fees from credit-risk individuals and small businesses in need of money. Posing as an international banker, Totaro represented he could broker high-risk loans

to individuals by pooling their loans with others and offering the package as a private placement offering geared to European banks and other investors. He enlisted the services of prominent New York law firms, banks, and brokerage houses. He falsely told individuals that Moody's Investor Service and Standard & Poor's had given his offering high ratings. He showed individuals a forged letter from a London attorney stating the closing would occur within two weeks. But he never disclosed that he had been convicted of mail fraud in the Western District of New York in 1984 for hatching a similar scheme. In the end, Totaro never held the offering and simply pocketed the advance fees mailed or wired to his bank accounts by individuals, including many from South Dakota.

Totaro offered a good faith defense at trial. He claimed his lawyers and bankers worked diligently to make the private placement offering a success, but that individuals lost money when—through no one's fault—European investors lost interest in the offering. Totaro claimed individuals' loss of advance fees was simply a business risk incurred in trying to obtain high-risk loans. He therefore requested a jury instruction on the defense of good faith. The district court[1] agreed to give one, but Totaro now contends the district court's instruction was legally insufficient to provide the jury an opportunity to accept his defense.

The district court's instruction on good faith followed our Model Criminal Jury Instruction 9.08, which we endorsed in United States v. Cheatham, 899 F.2d 747, 751-52 (8th Cir. 1990). The instruction followed the model charge and its note 2(c) verbatim, save for the omission of the first paragraph in note 2(c). The district court omitted that paragraph because it was not convinced Totaro had introduced sufficient evidence during trial to support that portion of the instruction. We believe the instruction was appropriate because it properly conformed to the evidence offered at

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

trial while conveying the essence of the good faith defense to the jury: "Good faith is a complete defense to the charges contained in the indictment if it is inconsistent with the intent to defraud which is an essential element of the charges." See id. at 751 (noting a district court's "wide discretion in formulating appropriate jury instructions").

We likewise reject Totaro's argument that the instruction shifted the burden of proof by failing to specify that the government bore the burden of disproving good faith. The last sentence of the instruction advises the jury to consider evidence of good faith in order to determine "whether or not [Totaro] acted with the intent to defraud"—an element of the very crimes the *government* was required to prove.

Totaro also contends the district court abused its discretion in permitting the government to introduce evidence of his earlier mail fraud conviction. We disagree. Totaro's conviction was admissible under Fed. R. Evid. 404(b), which permits the introduction of evidence of past crimes to demonstrate the "absence of mistake or accident." Given Totaro's defense of good faith, the government was entitled to admit the old conviction to prove Totaro's conduct was not a "mistake or accident." See United States v. Misle Bus & Equip. Co., 967 F.2d 1227, 1234 (8th Cir. 1992).

Totaro argues venue was improper in South Dakota as to the money laundering charges. Venue was proper, however, because Totaro's criminal scheme began with the transfer of funds from bank accounts in South Dakota to his lending institutions. An offense "begun in one district and completed in another" may be "prosecuted in any district in which [the] offense was begun, continued, or completed," 18 U.S.C. § 3237(a), and we have approved of venue in similar circumstances, Prosper v. United States, 218 F.3d 883, 884 (8th Cir. 2000) (per curiam).

Turning to the indictment, Totaro contends the district court erred in denying his pretrial motion to dismiss various money laundering, mail fraud, and wire fraud

charges for pleading deficiencies. He argues the indictment pleaded the money laundering charges duplicitously, by joining multiple charges of "reinvestment" and "concealment" money laundering in single counts. This argument fails because Fed. R. Crim. P. 8(a) permits such charging if "the offenses charged . . . are based on . . . two or more acts or transactions connected together or constituting parts of a common scheme or plan." Where a "statute specifies two or more ways in which one offense may be committed, all may be alleged in the conjunctive in one count of the indictment, and proof of any one of the methods will sustain a conviction." United States v. Street, 66 F.3d 969, 974 (8th Cir. 1995) (quotation omitted). The government alleged Totaro *reinvested* some of the ill-gotten advance fees to pay lawyers and investment bankers to keep the scheme going, while also *concealing* portions of the profit by paying utility bills and improving his wife's country estate. Because Totaro used the same pool of funds to reinvest and conceal, the government properly charged both types of money laundering in single counts.

As to the mail and wire fraud counts, Totaro believes the indictment failed to provide him adequate notice of the basis for the charges. "Indictments are normally sufficient unless no reasonable construction can be said to charge the offense." United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995) (quotation omitted). And Fed. R. Crim. P. 7(c)(1) provides an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Totaro's indictment easily satisfied this low threshold by providing lists of the dates, origins, and amounts of many of the transfers, and in some instances, the names of persons involved or a description of the types of transfers.

Totaro challenges the sufficiency of the evidence to sustain the jury verdict on the mail and wire fraud counts, as well as the racketeering counts. We review a sufficiency of the evidence challenge in a jury trial strictly, viewing all of the evidence in the light most favorable to the verdict, and overturning a conviction "only if no reasonable jury could have concluded that the defendant was guilty beyond a

reasonable doubt on each essential element of the charge." United States v. Jimenez-Villasenor, 270 F.3d 554, 558 (8th Cir. 2001). Totaro admits accepting money that individuals wired or mailed to him from South Dakota. And Totaro's associates testified they used that money to pay their utility and legal bills, kept some of it for themselves, and even diverted money to improve the country estate of Totaro's wife. These activities took place as Totaro was fraudulently representing to borrowers he would pool their high-risk loans in a private placement offering. We believe there was ample evidence to sustain the jury's verdict on the mail and wire fraud counts.

Likewise, we find sufficient evidence to support the jury's verdict of guilt on the RICO charges. "[A] RICO enterprise must exhibit three basic characteristics: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that in a pattern of racketeering." Nabors, 45 F.3d at 240 (quotation omitted). Totaro claims the government failed to introduce sufficient evidence to prove the second and third elements.

The government presented the case to the jury as a wheel-and-spoke enterprise in which Totaro occupied the center of the conspiracy and controlled the actions of numerous confederates round him. Totaro argues this evidence does not prove "continuity of structure and personnel," the second element, because his cast of characters changed over time. We have rejected this very argument in prior cases: "both the structure and the personnel of an enterprise may undergo alteration without loss of the enterprise's identity as an enterprise." United States v. Kragness, 830 F.2d 842, 856 (8th Cir. 1987). The government introduced evidence showing that Totaro's associates played the same role from year to year, even if their identities changed.

In addition, Totaro contends the government failed to introduce evidence sufficient to support the third element—an ascertainable structure distinct from that in a pattern of racketeering. We cannot accept Totaro's argument because of our

decision in <u>Diamonds Plus, Inc. v. Kolber</u>, 960 F.2d 765, 770 (8th Cir. 1992). <u>Diamonds Plus</u> involved an enterprise that placed national ads for people to meet in Houston with the RICO enterprise's director to obtain "financing." Interested individuals placed deposits, which the RICO enterprise pocketed without ever providing the financing promised in the ads. We concluded the alleged RICO enterprise in that case had a structure apart from that used to commit the predicate acts of mail fraud and wire fraud, namely, the listing of ads in a newspaper and maintenance of a phone line where potential customers could call. Totaro's RICO enterprise operated similarly. He placed ads on the internet and in periodicals seeking borrowers to defraud. He rented office space, hired secretaries and placed ads—all acts separate and apart from the RICO enterprise itself. Thus, the government met its burden of introducing sufficient evidence to permit a jury to convict Totaro.

We reject Totaro's remaining claims and arguments without discussion. <u>See</u> 8th Cir. R. 47B.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.