# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3842

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Ronald N. Totaro, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Adrienne Totaro, | * | |
| | * | |
| Interested Party-Appellant. | * | |

_____

Submitted: June 13, 2003

Filed: October 8, 2003

_____

Before BOWMAN, MURPHY and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

This appeal presents the question of how to untangle the real property interests of a criminal from those of the criminal's spouse for purposes of forfeiture pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1963(*l*). Adrienne Totaro appeals from the district court's denial of her claim of legal right, title or interest to the country estate she shared with her husband Ronald

Totaro for almost thirty years. We conclude Adrienne proved by a preponderance of the evidence she does hold legal right, title or interest superior to Ronald's in a portion of the improved property. We vacate the forfeiture order in part and remand for further proceedings.

I

This appeal arises from an ancillary proceeding to the conviction of Ronald N. Totaro for sixty-one counts of mail fraud, wire fraud, money laundering, unlawful money transactions and RICO racketeering. See United States v. Totaro, No. 01-3486, 2002 WL 1453678 (8th Cir. July 8, 2002) (affirming the conviction). Ronald was sentenced to thirty years in prison and fined $2.3 million for operating an "advance fee" scheme in which he conned investors out of millions of dollars between 1984 and 1999. Id. at *1. Along with the verdict, the jury returned a special verdict form indicating it found, beyond a reasonable doubt, the Totaros's country estate was "acquired or maintained" with the proceeds of Ronald's illegal activities.

Following the verdict and pursuant to the RICO forfeiture statute, 18 U.S.C. § 1963(*l*)(1), the district court entered a preliminary order of forfeiture and the government caused a notice of forfeiture to be published. Adrienne Totaro, wife of Ronald, and her father Edmund Kotkeiwicz both filed notices of claim of legal right, title or interest in the property pursuant to § 1963(*l*)(2) and (3). The district judge referred this ancillary proceeding to a magistrate judge who held a hearing pursuant to § 1963(*l*)(2) and produced a report recommending the district court deny the claims of Adrienne and Mr. Kotkeiwicz. The district court adopted it without further elaboration. Adrienne filed this appeal. Mr. Kotkeiwicz does not appeal from the district court's decision. Ronald, of course, is not a party to this proceeding. His rights to the property have been deemed forfeited.

## II

The history of the property is as follows. Ronald and Adrienne married in 1968 and Ronald bought land at 1017 East Quaker Road, East Aurora, NY, in 1972. In April 1974, Ronald signed a quit claim deed conveying the land to himself and Adrienne. In April and November 1974, the Totaros took out mortgages for $55,000 and $45,700, respectively, and used the proceeds to build a house on the land. They moved into their new home in September 1974.

Ronald filed for bankruptcy in 1977. In 1978, Adrienne acquired full legal title to the property by paying $500 to become the assignee of a creditor holding a mechanic's lien on Ronald's undivided half-interest in the property. From that point on Adrienne has been the sole title owner of the parcel at 1017 East Quaker Road. In June 1978, Adrienne obtained another mortgage for $37,639.90, which was consolidated with what remained of the two mortgages taken out in 1974, for a new mortgage of $106,500. In 1982, Adrienne bought a small plot of land next door at 1031 East Quaker Road to "square off" the parcel, making the total size of the estate 8.79 acres. The purchase price and Adrienne's source of funding are unclear in the record below, but she says she bought it with part of a $67,500 loan from her father. This loan was the basis for Mr. Kotkeiwicz's now-abandoned claim to the property.

The first act forming part of Ronald's RICO crime took place in 1984. From that date forward Ronald funneled some of the proceeds from his RICO crimes into Adrienne's checking account, from which she paid the mortgage payments. Between 1994 and 1997 the Totaros added a tennis court, pool, guest house (sometimes referred to as a pool house), landscaping and new kitchen at a total cost of $339,341.06. Ronald arranged and dealt with the contractors but all payments for these improvements came from Adrienne's checkbook. Between December 1993 and January 1998, 96% of the funds passing through Adrienne's checkbook (a total of $609,800) were proceeds from Ronald's RICO crimes. Ronald often represented

himself as owner of the property and he used it as collateral for several loans. A title search revealed several tax liens, judgments and encumbrances against Ronald for the estate between 1992 and 1999. Three tax liens against Adrienne were also listed.

The magistrate judge found Adrienne's income during the relevant period to have been as follows. Between 1974 and 1982 Adrienne earned between $10,000 and $12,000 a year as a substitute teacher. In 1983, she did not work outside the home, but that is the year her father loaned her $67,500. In 1984, Adrienne earned $35,000 working for a toy company. In 1985 and 1986, Adrienne says, she returned to being a part-time substitute teacher and worked as a consultant for her husband for some period of time; she cannot remember what she earned those years. From 1987 to 1989, she earned less than $20,000 per year as a substitute teacher. These figures are Adrienne's own estimates, and not certain amounts, because Adrienne and Ronald did not file taxes after the mid-1980's. Adrienne's reported wages averaged $2,137.70 per year from 1990 to 1999.

III

In reviewing the denial of a third-party claim pursuant to § 1963(*l*) in a RICO forfeiture proceeding, we review the district court's findings of fact under the clearly erroneous standard and its interpretation and application of the federal forfeiture laws de novo. United States v. O'Dell, 247 F.3d 655, 679 (6th Cir. 2001); cf. United States v. Simmons, 154 F.3d 765, 770-772 (8th Cir. 1998) (applying de novo review to interpretation of 18 U.S.C. § 1963(a)(3) and clear error to the district court's finding of facts).

Defendants who violate the RICO Act must forfeit "any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity . . . ." 18 U.S.C. § 1963(a)(3). RICO forfeiture is an in personam sanction against the individual, not an in rem action; so § 1963 forfeiture reaches only

the criminal defendant's interest in the property. See United States v. Alexander, 32 F.3d 1231, 1234, 1235 (8th Cir. 1994) (quoting United States v. Sarbello, 985 F.2d 716, 724 (3d Cir. 1993)); United States v. Anguilo, 897 F.2d 1169, 1210 (1st Cir. 1990); United States v. Ginsburg, 773 F.2d 798, 800-01 (7th Cir. 1985).

The government's interest in the property vests at the time of the unlawful activity. 18 U.S.C. § 1963(c) ("All right, title, and interest in property . . . vests in the United States upon the commission of the act giving rise to forfeiture under this section."); Ginsburg, 773 F.2d at 801 ("In short, while the government's interest in the profits or proceeds of racketeering activity does not *attach* until conviction, its interest *vests* at the time of the act that constitutes the [RICO] violation . . . .") (emphasis in original). With the verdict of forfeiture in the criminal proceeding, the government succeeds the defendant's entire interest in the property. United States v. Anderson, 782 F.2d 908, 917-18 (11th Cir. 1986). Third parties who wish to assert a right, title or interest in the forfeited property cannot intervene in the criminal case or file their own separate action against the United States. 18 U.S.C. § 1963(i)(1), (2). Instead, third parties must assert their claims in the forfeited property in the civil proceeding ancillary to the criminal trial. 18 U.S.C. § 1963(*l*).

Section 1963(*l*) provides the mechanism by which third parties, also referred to as petitioners, may assert claims to property subject to RICO forfeiture. 18 U.S.C. § 1963(*l*)(2)-(6); United States v. Gilbert, 244 F.3d 888, 906-07 (11th Cir. 2001). It permits petitioners to challenge an order of forfeiture by showing they had a vested or superior legal right, title or interest in the property at the time the criminal acts took place, or they were bona fide purchasers for value. 18 U.S.C. § 1963(*l*)(6)(A), (B). Adrienne asserts only the first of these – a vested or superior right, title or interest. The governing rule reads:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that–

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

. . .

the court shall amend the order of forfeiture in accordance with its determination.

18 U.S.C. § 1963(*l*)(6). The court alone is responsible for deciding this question. 18 U.S.C. § 1963(*l*)(2).

No prior panel of the Eighth Circuit has had occasion to apply § 1963(*l*). In addition to decisions of other courts that have considered § 1963(*l*), two other sources guide our analysis. First, § 1963(*l*) is identical to the drug crimes forfeiture statute, 21 U.S.C. § 853(n), so case law implementing § 853(n) is persuasive in our task of applying § 1963(*l*). Gilbert, 244 F.3d at 906 n.47 ("Cases applying one of these analogous statutes have used section 853(n) and section 1963(*l*) cases interchangeably."); cf. United States v. Lavin, 942 F.2d 177, 185 n.9 (3d Cir. 1991) (noting § 853(n) was enacted with language identical to § 1963(*l*) and concluding § 1963(*l*) is a useful guide in the application of § 853(n)). Second, we look to state law to evaluate a claim to a legal right, title or interest in the subject property, so long as doing so does not frustrate a federal interest. See United States v. O'Dell, 247 F.3d 655, 680 (6th Cir. 2001) (applying Tennessee law to gauge a petitioner's interest in a farm subject to a preliminary order of forfeiture pursuant to § 853(a)); cf. United States v. Ben-Hur, 20 F.3d 313, 317 (7th Cir. 1994) (applying Wisconsin property law in a § 853(a) forfeiture proceeding). The Totaros's country estate is situated in New York state, therefore, we will refer to the law of New York.

Much of Ronald's RICO proceeds were funneled into Adrienne's checking account, from which the mortgage, real estate taxes, and costs of improvements were paid. Adrienne's earnings were too small to have been the sole or even the primary source of money to pay these costs. The magistrate judge concluded from these facts that Adrienne was but a straw owner and therefore did not hold a legal right, title or interest vested in her rather than in Ronald. In so deciding, the magistrate judge interpreted § 1963(*l*)(6)(A) as requiring more than the bare legal title held by Adrienne. In addressing the second clause of § 1963(*l*)(6)(A) the magistrate judge found that any right, title or interest in the property held by Adrienne was not superior to Ronald's.

Before the district court Adrienne asserted a claim to the entire country estate – both parcels of land, the house and all the improvements. On appeal, Adrienne now concedes that the major improvements made to the country estate in the 1990's – the remodeled kitchen, the pool, tennis court and guest house – are subject to forfeiture. She has made this concession because she does not dispute the magistrate judge's conclusion the improvements were paid for with RICO proceeds, albeit with checks from Adrienne's checking account. Therefore, the question before this court is whether the district court erred in denying her notice of claim only with respect to the land and unimproved house.

We begin with Adrienne's assertion of the "innocent owner" defense. She asserts the entire property (minus the improvements she concedes are forfeited) should not be forfeited on the ground she is an innocent owner. She is completely innocent of RICO crimes, however, there is no statutory basis upon which to base an innocent owner defense. Unlike the civil forfeiture statute, there is no explicit or implied innocent owner defense in § 1963. Such a clause would be superfluous. By its terms, RICO forfeiture is an in personam action, so it reaches only the property of the criminal defendant. Because the statute provides for forfeiture of only the RICO defendant's property, there are no circumstances in which the property of an innocent

owner is lawfully forfeited pursuant to § 1963. In effect, assertion of this defense begs the question decided below, namely, what was Adrienne's legal interest in the country estate?

Turning to her statutory claims, the district court was required by § 1963(*l*) to amend the forfeiture order if Adrienne proved by a preponderance of the evidence she either (1) had a legal right, title or interest *vested* in her rather than in Ronald from 1984 to 1999 (the period of the RICO acts); or (2) had a legal right, title or interest *superior* to Ronald's during that time. Adrienne argues she prevails under either clause of § 1963(*l*)(6)(A).

We begin with analysis of the first clause. It is undisputed Adrienne has held title under the laws of New York to the first parcel of land since 1978 and to the second since 1982. Title was vested in her rather than in Ronald before his RICO violations began in 1984. If bare title suffices under § 1963(*l*) to save the property from forfeiture, Adrienne prevails. The government urges this court to hold Adrienne is a "straw" or "nominal" owner and therefore not a beneficiary of this clause. Other courts have recognized straw or nominal owners may not defeat forfeiture. See, e.g., United States v. Ida, 14 F. Supp. 2d 454, 460-61 (S.D.N.Y. 1998) (finding petitioner was straw owner without legal right, title or interest to defeat forfeiture).

This case does not, however, present the hallmarks of straw or nominal ownership: lack of possession of the property and no exercise of dominion or control over it. See United States v. One 1990 Chevrolet Corvette, VIN No. 1G1YY3384L5104361, with All Appurtenances and Attachments thereon, 37 F.3d 421, 422 (8th Cir. 1994) (holding claimant with legal title to a car was a nominal owner and was therefore not entitled to prevent forfeiture); United States v. One 1945 Douglas C-54 (DC-4) Aircraft, Serial No. 22186, 604 F.2d 27, 29 (8th Cir. 1979) (holding title owner of an aircraft may not have standing to challenge the forfeiture

if the criminal defendant exercised dominion or control over it by, amongst other things, using it as collateral for a loan); United States v. One 1971 Porsche Coupe Auto., Vehicle Identification Number 9111100355, 364 F. Supp. 745, 748 (E.D. Pa. 1973) (finding forfeited car's owner of record was nominal owner who could not challenge forfeiture because he gave the car to his son, the criminal defendant, who exercised "sole possession and exercised dominion and control over it."). Adrienne lived on the property and exercised dominion and control over it – perhaps not exclusive dominion and control, but sufficient dominion and control nonetheless. She lived there and raised the Totaros's children on the property. She was personally invested in the ownership of the property. She bought Ronald's half of the first parcel from his creditor for $500 – a sum within Adrienne's sole purchase power with her salary as a substitute teacher. The government casts aspersions on this transaction but points to no New York law upon which we could rule it invalid. She bought the second parcel from a neighbor some six years before Ronald's RICO activity started; so there is no reason to believe this purchase was accomplished with tainted funds. In addition to her personal financial investment in the property, she encumbered the property with three tax liens. Under these facts we are reluctant to declare Adrienne a mere straw or nominal owner.

We find Adrienne's bare title insufficient to prevent forfeiture under the first clause of § 1963(*l*)(6)(A) for a different reason. When Ronald began his RICO violations in 1984, the estate was encumbered with a considerable mortgage. It was the proceeds from Ronald's RICO violations, filtered through Adrienne's checking account, which paid the mortgage, real estate taxes and upkeep on the property. The magistrate judge found, on a sound factual basis, that Adrienne's income alone was far from sufficient to pay all or a substantial portion of the mortgage, real estate taxes and upkeep. "But for" the RICO proceeds, therefore, Adrienne would not hold title to the country estate. It would do a severe disservice to the intent and purpose of the RICO forfeiture statute if a criminal were able to protect and enjoy RICO proceeds by investing them in property titled to a spouse. See United States v. Martinez, 228

F.3d 587, 590 (5th Cir. 2000) ("A defendant's interest in the proceeds of RICO activities extends to property traceable to the proceeds of racketeering activity."). We will therefore not allow Adrienne to benefit from the blanket protection of title ownership. We hold Adrienne's bare title is insufficient to prevent forfeiture of the estate under the first clause of § 1963(*l*)(6)(A).

We now turn to the second clause, under which Adrienne may prevail if she can show a legal right, title or interest in the property superior to Ronald's right, title or interest. 18 U.S.C. § 1963(*l*)(6)(A). The government urges this court to conclude Adrienne held no right, title or interest in the property superior to Ronald's on the ground the jury in Ronald's criminal case found, beyond a reasonable doubt, the estate was "acquired or maintained" with the proceeds from Ronald's crimes. The jury's decision determines the fate of only Ronald's interest in the property. Its verdict makes Ronald's entire interest in the property forfeited to the government, but it does not decide the question of what, if anything, Adrienne or any other third parties own. That question was not put to the jury. Instead, we look to state law to sort out the respective ownership interests, and save from forfeiture the portion of the estate Adrienne can prove is hers. O'Dell, 247 F.3d at 680.

The magistrate judge found the entire estate was forfeitable, a finding supportable only if Adrienne held no legal right, title or interest in the property superior to Ronald's. We conclude that finding was in error, however, because Adrienne has proven by a preponderance she had a substantial legal interest, title or claim to the property. Adrienne proved by a preponderance of the evidence she received half of the first parcel as a gift from Ronald, who bought it with funds untainted by RICO proceeds. She legally purchased Ronald's remaining half of the first parcel from one of his creditors, by all appearances without assistance from her bankrupt husband. The magistrate judge did not decide the factual question of whether the money to buy the second parcel really came from Adrienne's family (and therefore not Ronald) as she asserts. If Adrienne's family indeed paid for the second

parcel, it was another contribution Adrienne made to the acquisition of the property she kept in her name.  See Parkinson v. Parkinson, 744 N.Y.S.2d 101, 102 (N.Y. App. Div. 2002).  She held title to both parcels before and throughout the commission of Ronald's RICO crimes.  Her retention of ownership was unsullied by RICO funds until 1984, by which time it appears likely she had accumulated some economic value in the land and home by her own efforts.  We therefore hold the district court erred in finding the entire country estate forfeited.

To refresh, RICO forfeiture is in personam, so forfeiture is limited to Ronald's own interest in the property.  18 U.S.C. § 1963(a)(1); Alexander, 32 F.3d at 1234-35.  The role of the district court was to determine exactly what is Ronald's and forfeit it, but to forfeit only that which is Ronald's.  United States v. Peters, 777 F.2d 1294, 1296 (7th Cir. 1985) ("An examination of the forfeiture provision reveals that Congress clearly intended that the government acquire only that interest which the criminal defendant held in the property."); United States v. Chavez, 323 F.3d 1216, 1219 (9th Cir. 2003) (holding, in a § 853 forfeiture case, "The property of an innocent spouse is not to be taken to satisfy a forfeit of her husband.").  If this court were to deem forfeited the entire estate despite a valid claim of partial ownership by a third party, the result would be in the nature of an in rem forfeiture, not one in personam.  Gilbert, 244 F.3d at 919 ("If criminal forfeiture reached beyond that portion of the property that was owned by a defendant, such a form of forfeiture would be in rem, against the property, rather than in personam, against the defendant.").  It would also punish the third party, against whom no jury has returned a verdict of guilt, and may therefore raise constitutional questions of a whole different order.  The trial court must therefore engage in a factual analysis to determine the precise boundaries of the legal right, title or interest asserted by the third party and save it from forfeiture.  On the limited facts presented, it is a knotty question indeed.

As both parties point out, New York law respecting the division of marital property does not normally govern the question of how much of a marital home is

-11-

owned by each spouse because neither spouse's interest in marital property vests unless and until the marriage is dissolved. Seifried v. Seifried, 726 N.Y.S.2d 837, 839 (N.Y. Sup. Ct. 2001) ("Equitable distribution rights under New York law vest only upon the rendering of a judgment awarding distribution of marital property. . .. There are no vested present or contingent property rights or interests, legal or equitable, in such property solely because it may be categorized as marital property."); see Peterson v. Goldberg, 550 N.Y.S.2d 1005, 1007 (N.Y. Sup. Ct. 1990) ("The right to equitable distribution does not come into being during the marriage or at the commencement of the [divorce] action, but accrues upon dissolution or termination of the marriage."). In New York, while they are married, neither spouse's interest in the marital property is superior to the other's. Id. Ronald and Adrienne continue to be married, so this body of law would not normally be applied to gauge their relative interests.

Indeed, several courts have rejected state divorce law as the basis for a spouse's claim to a legal right, title or interest in forfeited property. In United States v. Alexander, the wife of a RICO defendant asserted a marital interest in real property subject to forfeiture. No. 4-89-85, 1991 WL 13727, *1 (D. Minn. 1991), aff'd on other grounds sub nom., Alexander v. Thornburgh, 943 F.2d 825 (8th Cir. 1991), vacated on other grounds sub nom., Alexander v. United States, 509 U.S. 544 (1993). The district court found she had no legal right, title or interest because, under Minnesota law, her interest in marital property did not vest unless and until divorce or the death of her husband. Id. at *1-*2. Therefore, she had no right vested or superior to her husband's. Another case, United States v. Strube, involved forfeiture of real property and a boat pursuant to § 853. 58 F. Supp. 2d 576 (M.D. Pa. 1999). In Strube, title to the real property was in the defendant's name and his wife proved no more than a possessory interest, which is insufficient to prevent forfeiture. Id. at 584. She also asserted a marital interest in half the boat because her husband, in whose name it was titled, bought it while they were married. The court found she had no marital interest in the boat because under Pennsylvania law marital interests in

property do not vest until divorce. Id. That court concluded the wife had no standing to make her § 853(n) claim and denied her a hearing. See also United States v. 9844 South Titan Court, Unit 9, Littleton, 75 F.3d 1470, 1478 (10th Cir. 1996) ("Under Colorado law, a spouse's right to the other spouse's property does not vest until death or divorce . . . [a rule that] prevents a spouse without title from asserting an interest, either legal or equitable, in marital property."), overruled on other grounds by United States v. Ursery, 518 U.S. 267 (1996); United States v. Schifferli, 895 F.2d 987, 989 (4th Cir. 1990) (holding wife had no standing to challenge in rem forfeiture of dentistry office where convicted husband held title and, under South Carolina law, her right to marital property did not vest until divorce); United States v. Tanner, 853 F. Supp. 190, 196 (W.D. Va. 1994) (holding wife's claim time-barred and, in the alternative, she had no claim because her marital interest did not vest until divorce, which became effective after husband's offense). But cf. United States v. Lester, 85 F.3d 1409, 1413 (9th Cir. 1996) (holding, in § 853(n) proceeding for substitute forfeit property, defendant's wife had a nonforfeitable vested undivided half interest in community property under California law); Martinez, 228 F.3d at 589-90 (holding wife of RICO defendant could claim no interest in apartments built entirely with RICO funds where government conceded she was entitled to one half of the land pursuant to community property law).

The above cases are distinguishable from the instant action in one critical respect: in those cases the spouses relied on their marital and possessory interests alone to establish a superior legal right, title or claim to the forfeited property. Here, Adrienne has proven she holds sole title to the property under New York law. Having established she owns some legal right, title or interest to the property superior to Ronald's, the vexing question is, how much of it is hers? For the reasons explained above, Adrienne's title alone should not be allowed to resolve the question; much of the estate was paid for with RICO funds. The value of the property minus the RICO funds traced to the property would be an under-inclusive forfeiture, as Ronald's interest in the property is likely greater than the RICO funds he used to pay the

-13-

mortgage, real estate taxes, and upkeep. RICO demands all of Ronald's interest in the property be forfeited, not just the portion traceable to RICO money, because his interest was "acquired or maintained" with RICO funds. 18 U.S.C. § 1963(a) ("Whoever violates any provision of [RICO] . . . shall forfeit to the United States, irrespective of any provision of State law--(1) any interest the person has acquired or maintained in violation of [RICO] . . .").

State property law cannot trump the government's right to forfeiture of all Ronald's interest. Because all of Ronald's interest must be forfeited, the court will have to sort out how much was his and how much was hers. The parties point to no other state or federal law, and this Court can think of none, which is better suited to our purposes than divorce law. In the absence of rules specifically designed for the forfeiture context, the best rules to apply to sort out the property rights of married people are found in the laws governing divorce – an established body of law designed to do just that.

Indeed, the relationship of divorcees is analogous to the relative positions of the parties here. The government is stepping into Ronald's shoes and claiming his interest, and its interests are decidedly adverse to Adrienne's. By referring to New York divorce law, the district court should be able to determine what Adrienne's interests in the property are, forfeit everything else, and thereby adhere to both the letter and spirit of the forfeiture statute without penalizing or punishing the Totaros for remaining married. Proceeding in this manner also accomplishes the primary purpose of § 1963, which is to forfeit all of Ronald's interest in the property. We therefore direct the district court on remand to apply the laws of New York governing the division of marital property upon dissolution of marriage to determine Adrienne's interest in the country estate. Because the government's interest vested at the time of the illegal activity, Ginsburg, 773 F.2d at 801, the district court should determine

Adrienne's rights in the country estate in 1984 and amend its order of forfeiture accordingly.

_____