**UNITED STATES of America,
Plaintiff,**

**v.**

**Tommy HAUBRICH, Defendant.**

**No. 11-CR-00039-03-W-DGK**

United States District Court,
W.D. Missouri, Western Division.

Signed May 29, 2015

Bruce A. Rhoades, U.S. Attorney's Office, Kansas City, MO, for Plaintiff.

John A. Picerno, Kansas City, MO, for Defendant.

**ORDER DENYING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE PETITIONER'S MOTION FOR AN ANCILLARY HEARING**

GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Defendant Tommy Haubrich ("Haubrich") was convicted of six federal felonies

related to burglarizing and distributing controlled substances. In connection with those convictions, the Court ordered Haubrich to forfeit over a million dollars. When Plaintiff United States of America ("the Government") could not locate that much money from him, it moved to substitute real property Haubrich owned in Pennsylvania.

Claimant Darlene Brennan ("Brennan"), Haubrich's mother, has filed a pro se petition asserting an interest in the property and moves for a hearing to adjudicate her interest (Doc. 174). The Government responded with a motion for summary judgment that Brennan has no interest in the forfeited property (Doc. 190).

For the reasons below, the Government's motion for summary judgment is DENIED and Brennan's motion for a hearing is GRANTED.

## Background

Haubrich pled guilty in this Court to six felonies: conspiracy to distribute controlled substances; aiding and abetting the possession of controlled substances with the intent to distribute; and four counts of burglarizing, and conspiring to burglarize, controlled substances. At his change-of-plea hearing, Haubrich agreed to the allegations in the criminal forfeiture count of the Superseding Indictment.

On January 4, 2012, the Court entered an order directing Haubrich to forfeit a sum of money derived from his offenses, totaling $1,444,120.00. *See* 21 U.S.C.

§ 853(a)(1).[1] In November 2012, the Court sentenced Haubrich to 360 months' imprisonment and made final its earlier order of forfeiture.

Haubrich appealed to the Eighth Circuit, which affirmed his conviction and sentence. *United States v. Haubrich*, 744 F.3d 554 (8th Cir.2014). He has filed, in a separate case, a pending motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. *See Haubrich v. United States*, No. 15–CV–00155–W–DGK (W.D.Mo. filed Feb. 27, 2015).

After the appeal concluded, the Government established it could not find all of the money despite its due diligence. *See* 21 U.S.C. § 853(p)(1)(A). The Government moved to amend the order of forfeiture under Federal Rule of Criminal Procedure 32.2(e), alleging that Haubrich owned a parcel of real property at 1432 Van Kirk Street in Philadelphia, Pennsylvania ("the Property").[2] The Government sought the Property's forfeiture as a substitute asset. The Court granted the motion and issued an amended order of forfeiture. By this amended order, the forfeiture of Haubrich's interest in the Property, to the extent he had any, became final. *See* Fed. R. Crim. P. 32.2(e)(2)(A).[3]

Claimant Brennan then filed a timely "Petition Requesting a Hearing for the Adjudication Regard[ing] Property Interest," establishing her claim to the Property. Pursuant to Rule 32.2(e)(2)(B), the

---

1. Although improperly labeled a "Final Order of Forfeiture," *see generally United States v. Shakur*, 691 F.3d 979 (8th Cir.2012), the order functioned as a preliminary order of forfeiture because it gave the parties notice of the forfeiture and directed the forfeiture of specific property. *See* Fed. R. Crim. P. 32.2(b)(2)(A).

2. The First Amended Preliminary Order of Forfeiture (Doc. 172 at 1–2) recites a more precise description of the Property.

3. Brennan argues at length that the Government cannot forfeit the Property because it is not derived from Haubrich's offenses. The Court rejects this argument because substitute asset forfeiture does not require a connection between the substitute property and the underlying criminal offenses. *See* 21 U.S.C. § 853(p)(1).

Court initiated the required ancillary proceeding to adjudicate Brennan's interest in the Property. The parties conducted discovery.

The Government now moves for summary judgment on the amended order of forfeiture as to all third parties, pursuant to Rule 32.2(c)(1)(B) and 21 U.S.C. § 853(n).

As established for summary judgment purposes, the facts related to the Property are as follows. Haubrich bought the Property for $35,000 in February 2006. He decided to remodel the house on the Property. In the middle of the project, Haubrich ran short of the money he needed to continue. Brennan, his mother, loaned him "over $6,000.00 ... to have it finished" (Doc. 192 at 6).

At some point, Haubrich ended up in Missouri. He began burglarizing and distributing controlled substances in the spring of 2010, and continued doing so until early 2011. He was arrested in June 2011. Around this time, Brennan paid $30,000 to retain an attorney for Haubrich.

On January 19, 2012, fifteen days after the Court entered its preliminary order of forfeiture against the money, Haubrich executed a deed conveying title of the Property to Brennan. In return, Brennan paid him $1 and agreed to forgive both the $6,000 and $30,000 loans.

Brennan holds sole legal title to the Property. She visits the Property and has keys to the house. Although she has never lived at the Property, she has rented it out. The first tenant was Kristen Clark ("Clark"), the mother of Haubrich's sons and Brennan's grandsons. Brennan evicted Clark because she was addicted to heroin and allowing other addicts to live at the Property. Brennan then let Chris Ellenback ("Ellenback"), Haubrich's friend, live on the Property for the purpose of "helping" her. Ellenback lived there from May 2012 until October 2013. Because he never paid rent to Brennan, she evicted him as well.

Brennan has always wanted to sell the Property, at least in part so that she can hire an attorney for Haubrich to pursue postconviction remedies. She has consulted and hired a real estate agent to help sell the Property.

In several emails written from prison, Haubrich has referred to the Property as "my house." No party, including Brennan, appears to have ever paid taxes on the Property during the pendency of her ownership.

## Standard

Criminal Rule 32.2(c)(1)(B) permits a party in an ancillary criminal forfeiture proceeding to move for summary judgment under Federal Rule of Civil Procedure 56. Civil Rule 56 entitles a moving party to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To demonstrate a genuine dispute of a material fact, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor. *Gibson v. Geithner*, 776 F.3d 536, 539 (8th Cir.2015). The Court considers the moving party's statements of fact

admitted if the nonmoving party does not rebut them. L.R. 56.1(a).

### Analysis

As a preliminary matter, the Court notes that after the Government filed its reply in support of its motion, Brennan filed a sur-response (Doc. 198). The Court permits only one response from the nonmoving party when deciding motions. *See* L.R. 7.0(b). Because Brennan failed to seek leave of court to file a sur-response, her sur-response is stricken.

In an ancillary proceeding, a claimant must establish that she has statutory standing, which in this context means she has a legal interest in the forfeited property. *See* 21 U.S.C. § 853(n)(2). Then, the claimant can prevail if she establishes by a preponderance of the evidence that her ownership interest is superior to the Government's. *Id.* § 853(n)(6)(A).[4]

### I. Brennan can potentially establish statutory standing.

■ The Court begins by determining what legal interest Brennan has in the Property. The court applies the law of the jurisdiction that created the claimant's property interest to ascertain what interest she has in it. *United States v. Timley*, 507 F.3d 1125, 1129–30 (8th Cir.2007). The court can deviate from state law if applying state law so would "frustrate a federal interest." *United States v. Totaro*, 345 F.3d 989, 994 (8th Cir.2003) (analyzing criminal forfeiture under the Racketeer Influenced and Corrupt Organizations Act, which employs an essentially identical statutory scheme).

Courts have departed from state law in cases where it appears that the claimant was a "straw" or "nominal" owner. *See United States v. Morgan*, 224 F.3d 339, 342–43 (4th Cir.2000) (upon review of congressional intent, declining "to consider the role of state law" in favor of "evaluat[ing] whether the petitioner is a nominee when reviewing the substance of a § 853(n) claim") (footnote omitted)); *Totaro*, 345 F.3d at 995–96 (implicitly applying federal common law to determine ancillary proceeding standing without referencing the law of the state which it held established the claimant's legal interest); *United States v. Bond*, No. 6:13–CR–3013–MDH–2, 2015 WL 403102, at *3–4 (W.D.Mo. Jan. 28, 2015). *But cf. United States v. 1997 Int'l 9000 Semi Truck*, 412 Fed.Appx. 118, 123 n.8 (10th Cir.2011) (acknowledging a circuit split). Such courts have held that a claimant is a nominal owner, irrespective of state law, if she holds bare legal title to the forfeited property but exercises no dominion or control over it. *E.g. Morgan*, 224 F.3d at 343 (citing *United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 604 F.2d 27, 28–29 (8th Cir.1979)); *see Black's Law Dictionary* 1211 (10th ed. 2014) (defining "nominee" as "[a] party who holds bare legal title for the benefit of others or who received and distributes funds for the benefit of others"). A nominal owner has no legal interest, and thus no statutory standing. *See Morgan*, 224 F.3d at 343.[5]

■ Brennan holds legal title to the Property, and some of her actions appear to be for Haubrich's benefit. She has never

---

4. A claimant can alternately prevail by establishing that she is a bona fide purchaser for value, 21 U.S.C. § 853(n)(6)(B), but Brennan does not advance this theory.

5. The Government alternatively suggests that the transfer is fraudulent under state law, which here would be the law of Pennsylvania. Specifically, the Government cites a case in-

terpreting the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. Cons. Stat. §§ 5101–5110. Even if Haubrich's conveyance to Brennan was indeed "fraudulent" within the meaning of these statutes, the Government does not explain how fraudulent transfers are *void* under these statutes. Accordingly, the Court relies only on federal common law on this point.

resided at the Property and has never paid taxes on the Property. She states her primary reason for purchasing the Property was to orchestrate its sale, the proceeds of which would be used to hire a new attorney for Haubrich.

These actions, however, are consistent with actual ownership and intent to use the Property for profit. Although she wants to sell the Property to help her son, that is not her *sole* use of the Property. She purchased the Property for $1 and forgiveness of her two loans totaling over $36,000. Her overarching goal, at least in part, was to make money off the Property to recoup the amount she had loaned her son to finish his remodeling project and to retain an attorney. In furtherance of that goal, Brennan evicted Clark, who also did not pay rent, from the Property. She then rented the Property for about sixteen months to Ellenback and attempted to collect rent payments from him, before evicting him for nonpayment of rent. She engaged a real estate agent to list the Property.

Brennan appears to have independently made all of these decisions. Haubrich's beliefs regarding his ownership—for example, his repeated references to the Property as "my house"—have minimal probative value because this ancillary proceeding examines *Brennan*'s relationship to the Property, not Haubrich's.

A reasonable finder of fact, viewing these facts most favorably toward Brennan, could conclude that she "exercised dominion and control over [the Property]—perhaps not exclusive dominion and control, but sufficient dominion and control

nonetheless." *Totaro*, 345 F.3d at 995–96; *cf. United States v. Real Property & Improvements Located at 5000 Palmetto Drive*, 928 F.2d 373, 375 (11th Cir.1991) (finding a claimant in a civil forfeiture case had more than bare legal title to a property even though she permitted her son, the defendant, to live rent-free). As such, Brennan can show that she was not a mere nominal owner.[6]

Because there is a genuine dispute over whether Brennan was a mere nominal owner, she has standing to challenge the Property's forfeiture. *See* 21 U.S.C. § 853(n)(2).

## II. Brennan can potentially establish superiority of ownership.

Having held that Brennan may have standing, the Court proceeds to the merits of her third-party claim. In an ancillary proceeding on substitute forfeiture, a claimant can prevail by establishing that her interest in the forfeited property was superior to the defendant's interest at the time the court entered the amended order of substitute forfeiture. *United States v. Erpenbeck*, 682 F.3d 472, 478 (6th Cir. 2012); *see* 21 U.S.C. § 853(n)(6)(A).

The Court ordered the Property forfeited as a substitute asset on April 16, 2014, so the issue is whether Brennan's interest in the Property was superior to Haubrich's on that date. Haubrich quitclaimed title to the Property to Brennan on January 19, 2012. The record does not reflect any encumbrances or subsequent conveyances related to the Property. Thus, by April 16, 2014, Brennan had title to the Property

---

**6.** The Court decides this point without lending credence to several of Brennan's assertions. Most notably, Brennan argues that she is not a straw owner because she made $15,000 worth of repairs and improvement to the Property. The Government cites her bank records and lack of receipts to show that this large amount of work never occurred. Brennan responds only by saying the work did happen. This response fails to help her create a genuine dispute over material facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348.

and Haubrich held no interest. No reasonable trier of fact could conclude that Brennan's interest was inferior to Haubrich's, so she can prevail on this ground.

Because there is a genuine dispute over whether Brennan can establish standing and priority of ownership at the time the Court entered its First Amended Order of Forfeiture, the Government is not entitled to summary judgment. *See* Fed. R. Crim. P. 32.2(c)(1)(B); Fed. R. Civ. P. 56(a). The Government's motion is denied.

The Court emphasizes that it is not declaring that Brennan is entitled, at this stage, to keep the Property. Rather, the Court holds only that the extent of her interest is a close enough question that the Court must receive evidence at a hearing. *See* 21 U.S.C. § 853(n)(4). Accordingly, Brennan's motion for a hearing is granted.

### Conclusion

For the reasons discussed above, Claimant Darlene Brennan's unauthorized surresponse to the motion for summary judgment (Doc. 198) is STRICKEN. The Government's Motion for Summary Judgment (Doc. 190) is DENIED. Brennan's motion for a hearing (Doc. 174) is GRANTED. The Court will schedule a hearing on Brennan's petition in due course.

**IT IS SO ORDERED.**